UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/4/16

RALPHE LOPEZ, GUILLERMO URIZAR,
and MIGUEL COREA,

        Plaintiffs,

-against-

POKO-ST. ANN L.P. and RICHARD
OLSON,

        Defendants.

15-CV-4980 (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiffs in this action worked for varying periods of time as live-in superintendents at a low-income housing complex managed by defendant Poko-St. Ann L.P. (Poko). In their Amended Complaint (Dkt. No. 10), plaintiffs allege that throughout their employment Poko violated the overtime provisions of the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL) by requiring them to work in excess of 40 hours per week without paying them at the statutorily required time-and-a-half rate (or indeed, at any rate) for their overtime hours. Plaintiffs also allege claims for inadequate wage notices, unlawful wage deductions, and retaliation. Additionally, plaintiffs Ralphe Lopez and Guillermo Urizar allege that they were sexually harassed by a supervisor. On February 22, 2016, following a mediation conducted under my supervision, the parties reached a settlement and placed the material terms on the record. Thereafter, they consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) (Dkt. No. 34) and now submit their formal written Confidential Settlement Agreement and General Release (Agreement) for the Court's approval.

Having carefully reviewed the Agreement (Dkt. No 36-1), as well as the parties' joint letter (Dkt. No. 36) discussing the factors enumerated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012), I find that the terms of the settlement are fair and reasonable, with three

exceptions, discussed below. The total settlement payment of $175,000 is substantial, particularly in light of the legal and evidentiary challenges that would face the plaintiffs in the absence of a settlement. Among other things, the parties disagree concerning whether and to what extent (a) the plaintiffs were exempt from overtime under the NYLL as "janitors" of residential buildings, and (b) their remaining wage claims would be offset by the value of the apartments provided to them by Poko without charge. In addition, plaintiffs would likely have some difficulty substantiating their claims concerning the number of hours worked, particularly given the lack of contemporaneous records and the wide variation between their accounts, notwithstanding that each plaintiff held the same position. Plaintiff Urizar, who signed a release when he was discharged from his position in 2014, additionally faces the risk that all of his claims, with the exception of a time-limited FLSA claim, would be barred. These issues and more were vigorously argued at the Court-supervised mediation, by experienced counsel on both sides, and no doubt would be aggressively litigated should the case proceed towards trial. These factors mitigate in favor of approving the settlement as presented.

However, the present record does not contain sufficient justification for the $71,400 that is to be paid to plaintiffs' counsel in fees and costs. The fee was not included as one of the material terms of the settlement when the parties placed those terms on the record at the conclusion of the settlement conference, and the parties' joint letter states only that this payment, which constitutes 40.08% of the total settlement consideration of $175,000, will be made "pursuant to the reasonable contingent fee arrangement" between plaintiffs and their counsel. No further detail is provided concerning either the fee arrangement or the actual time and efforts of plaintiffs' counsel. Nor has any breakdown between costs and fees been provided.

2

"Except in extraordinary cases, courts in this District have declined to award fees representing more than one-third of the total settlement amount." *Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, 2015 WL 5122530, at *4 (S.D.N.Y. Aug. 31, 2015) (Engelmayer, J.) (rejecting FLSA settlement providing for 37% of the net settlement fund to be paid to plaintiffs' counsel). *See also Martinez v. Gulluoglu LLC*, 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (Engelmayer, J.) (rejecting 36% fee award); *Lazaro-Garcia v. Sengupta Food Servs.*, 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015) (Abrams, J.) (rejecting 39% fee award); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 173, 181-82 (S.D.N.Y. 2015) (Kaplan, J.) (rejecting fee award of between 40 and 43.6%); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (Furman, J.) (collecting cases rejecting fee awards over 33-1/3% of the total settlement value).

This case, as noted above, presents several novel issues that might, if fully litigated, provide justification for a more robust attorney fee. However, none of those issues was ever the subject of motion practice, much less trial. Instead, the parties focused on settlement from the outset, seeking an adjournment of their initial case management conference and delaying formal discovery in favor of private mediation. After one session with the mediator, the parties opted to continue their efforts at a judicial settlement conference, where they succeeded in resolving their dispute. There is much to be admired in this approach, which conserves both attorney time and judicial resources. Early settlement is also inherently rewarding for attorneys working on a contingency fee arrangement, because their fee, calculated as a percentage of the total settlement consideration, is likely to exceed their "lodestar," that is, the value of their work on the case calculated on an hourly basis. *See Hyun v. Ippudo USA Holdings*, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) (Nathan, J.) (percentage method is more advantageous to plaintiffs' counsel than lodestar method "where

3

the parties were able to settle relatively early"). For this very reason, however, it is difficult to justify an above-market contingency fee where, as here, the case settled before the first deposition was taken. Without further detail concerning the manner in which the $71,400 was calculated, and the justification for allocating over 40% of a compromise settlement package to counsel, I cannot approve this aspect of the Agreement.

Second, the parties' written Agreement contains a broad and sweeping general release, extending over three pages of text, under which plaintiffs release defendants, together with a long list of related entities and persons, of and from every imaginable claim, known or unknown, asserted or un-asserted, whether based on statutes, public policy, contract, tort, or common law, "such that no claim of any kind shall survive or not be settled and waived by this Agreement." Ag. ¶ 2(a). Further, although the document does not bar plaintiffs from filing a charge with or testifying before any federal, state or local agency, it requires them to forswear "any individual monetary relief or other individual remedies" resulting from such an administrative proceeding. *Id.* ¶ 2(b). Plaintiffs are also required to waive their right to "participate in any putative or certified class" against the releases, no matter what the basis of the suit might be. *Id.* ¶ 2(c). There is no release of any kind running from defendants to plaintiffs. The release provisions, moreover, are expressly designated non-severable. Ag. ¶ 5(c).

The parties' oral agreement, as placed on the record at the conclusion of the settlement conference, included a general release "to the extent permitted by law." The release described above goes beyond what the law permits. "Courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Martinez*, 2016 WL 206474, at *2 (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181). Broad releases are "doubly

4

problematic'" in the FLSA context, "where courts have a duty to police unequal bargaining power between employees and employers." *Flood v. Carlson Rests. Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (Torres, J.) (quoting *Nights of Cabiria,* 96 F. Supp. 3d at 181). Thus, a number of judges in this district refuse to approve any FLSA settlement unless the release provisions are "limited to the claims at issue in this action." *Lazaro-Garcia*, 2015 WL 9162701, at *2 (collecting cases). Judicial distaste for overbroad releases has been especially pronounced where "the releases were not mutual and protected only the defendants." *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (Sullivan, J.).

Because this case is not a class action, at least one of the dangers posed by an overbroad release—that it would bind class members who had no bargaining power concerning the settlement terms—is not present here. *See Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5-6 (S.D.N.Y. Nov. 6, 2015) (Cott, M.J.) (approving broad general release in non-class FLSA settlement on condition that release be mutual). In addition, as in *Souza*, the plaintiffs here are no longer employees of the defendants, reducing the danger that the release was obtained through improper job-related pressure. *See id.* at *5.

Nonetheless, I cannot approve the Settlement without some modification of the release provisions. "The Court's obligation to police FLSA settlements to ensure that they are fair and reasonable is a searching one. It implicates both the rights of the settling employee and the interests of the public at large." *Camacho v. Ess-A-Bagel, Inc.*, 2015 WL 129723, at *2 (S.D.N.Y. Jan. 9, 2015) (Kaplan, J.). Paragraphs 2(a)-2(c), as written, are not fair and reasonable. They would bar plaintiffs from any further redress against defendants, for any reason, and forever, even if (for example) they should later become beneficiaries of an environmental class action brought to redress a toxic tort, causing serious illness, that they could not have suspected at the time their

FLSA claims were settled. Moreover, the release would bar their claims not only against the defendants themselves but also against Poko's "present and former leasees, parent corporations, tax or credit syndicators, related properties or entities . . . and their current and former employees, investors, partners, tenants, residents, attorneys, officers . . . directors and agents thereof, both individually and in their business capacities." Ag. ¶ 2(a). As written, this language could be applied to absurd effect, barring (for example) a personal injury suit arising out of an automobile accident where the at-fault driver turned out to be a former investor in one of Poko's syndicators. In addition, as noted above, these provisions run in only one direction, releasing plaintiffs' claims against defendants (and others) but leaving defendants free to sue plaintiffs on any claim not barred by the principles of *res judicata*. "A mutual release [would] ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes." *Souza*, 2015 WL 7271747, at *5. *See also Lola*, 2016 WL 922223 at *2 (approving FLSA settlement containing "mutual" general releases "binding both Plaintiffs and Defendants").

Third, notwithstanding the fact that the Agreement itself has been placed upon the public record, it contains a series of confidentiality provisions that would prevent plaintiffs (although not defendants) from disclosing "any information regarding the underlying facts leading up to or the existence or substance of this Agreement," except to a government agency or to a spouse, tax advisor, or attorney. Ag. ¶ 3(a). Similarly, plaintiffs and their counsel are prohibited from "mak[ing] any publication on the internet or otherwise about the claims made in the instant matter . . . or the resolution hereof, or anything else about Defendants," regardless of the truth or falsity of the statements made. *Id.* ¶ 3(d). Again, this prohibition applies to plaintiffs only; defendants and their counsel are apparently free to blog about the case. According to the Agreement, any violation

6

of these confidentiality covenants "shall constitute a material breach of this Agreement . . . which may be a sufficient basis for an award of injunctive relief and monetary damages." *Id.* ¶ 3(b). In the event of such a breach, "[d]efendants shall not be obligated to make any payments or other consideration not yet tendered."

Provisions of this type are "contrary to well-established public policy." *Kang Ming Sun v. Guang Jun Li*, 2015 WL 6125710, at *1 (S.D.N.Y. Sept. 15, 2015) (Pauley, J.). Even before *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), which held that individual FLSA settlements, like class settlements, require the approval of the district court or the Department of Labor, the "overwhelming majority" of courts in this circuit rejected the notion that such settlements could be confidential. *Armenta v. Dirty Bird Grp., LLC*, 2014 WL 3344287, at *2 (S.D.N.Y. June 27, 2014) (Pauley, J.) (collecting cases). Prohibiting an FLSA plaintiff from speaking truthfully about his experiences, his claims, and the resolution of his lawsuit is "in strong tension with the remedial purposes of the FLSA," *Nights of Cabiria*, 96 F. Supp. 3d at 177, and also undermines the public's "right to know about the terms of such judicially approved settlements." *Armenta*, 2014 WL 3344287, at * 2. Thus, "it would be the very rare case, if any, where confidentiality terms in a settlement agreement would be appropriate in resolving a wage-and-hour lawsuit." *Souza*, 2015 WL 7271747, at *4. This is not such a case.[1]

---

[1] In addition to the one-way covenants that would prevent plaintiffs from communicating truthful information about the case and the settlement, both parties agree in ¶ 3(f) "not to defame or maliciously disparage or demean each other," and plaintiffs further agree in ¶ 3(g) to direct all requests for employment-related references to defendant Richard Olson, who shall confirm the plaintiffs' dates of employment and job titles. To the extent that the bilateral non-disparagement clause contained in ¶ 3(f) prohibits only defamatory statements by the parties, and does not bar "*truthful* statements about plaintiffs' experience litigating their case," *Martinez*, 2016 WL 206474, at *1 (emphasis added), it does not offend the public policy principles that prohibit outright gag clauses. Similarly, if and to the extent ¶ 3(g) *limits* Mr. Olson to providing objectively verifiable facts about plaintiffs' dates of employment and title, this clause would mirror those commonly found in employment litigation settlements and would not hold up judicial approval of the Settlement. Paragraph 13(c) of the Agreement, which prohibits plaintiffs from "encourag[ing]"

It is therefore **ORDERED** that the parties notify the Court, on or before April 18, 2016, of

their intention to either (a) file a revised settlement agreement and supporting materials consistent

with this Memorandum and Order or (b) proceed with litigation. If the parties resubmit, they must:

(1)     Reduce the fee award to a maximum of one-third of the total settlement consideration, plus actual (and documented) expenses advanced by counsel, or, in the alternative, set forth the facts that justify an above-market fee award and submit counsel's actual time and expense records; and

(2)     Remove any confidentiality provisions that would prevent plaintiffs from truthfully communicating facts concerning this litigation and its settlement; and

(3)     Narrow the the release provisions so as not to confer an unearned benefit on entities or individuals beyond the parties hereto (in the case of Poko, the releases may include its predecessors, successors, officers, directors, employees and agents, *acting in their capacity as such*); and

(4)     Further narrow the release provisions to claims arising out of the same facts that gave rise to the wage-and-hour and sexual harassment claims advanced in this action, or, in the alternative, revise all general release provisions to make them mutual.

Dated: New York, New York
       April 4, 2016

**SO ORDERED**.

**BARBARA MOSES**
**United States Magistrate Judge**

Copies to:
All counsel (via ECF)

anyone else to assert wage-and-hour claims against defendants, presents a closer question. It does not, on its face, prevent plaintiffs from providing truthful information about their own litigation and its outcome. The line between reporting facts and encouraging litigation can be a fine one, however, and the parties would be well-served either to eliminate this clause or spell out, in more detail, what would constitute improper "encouragement."